[No. 37422.    Department Two.    September 30, 1965.]

CECELIA ARONSON, *Respondent*, v. EBBA MURK *et al.*,
*Appellants.**

*Reported in 406 P.2d 607.

*Roy E. Jackson* and *Thor P. Ulvestad*, for appellants.

*Lycette, Diamond & Sylvester* and *Herman Howe*, for respondent.

DONWORTH, J.—This is an appeal from a judgment for plaintiff enjoining defendant from satisfying a judgment from the surplus equity in real property over and above the statutory $6,000 homestead exemption. The dispute involves the legal significance of the following sequence of events:

(1) January 9, 1956, Louis and Cecelia Aronson filed a valid declaration of homestead on their residence property in Seattle. This property was held as community property.

(2) In 1958, the Aronsons moved to Alaska to live.

(3) December 10, 1958, Ebba Murk and Ragnar Murk were granted judgment by the Superior Court for King

County in the amount of $6,951.05, plus costs, against the marital community of Louis and Cecelia Aronson.

(4) Louis Aronson died May 31, 1961. Ebba Murk was appointed administratrix of his estate in Washington. Apparently, no other probate proceedings were started in either Washington or Alaska.

(5) April 25, 1962, a writ of execution on the Murk judgment of December 10, 1958, was issued and delivered to the sheriff of King County, Washington, who levied on the real property on which the Aronsons had filed their homestead. The writ of execution was obtained pursuant to RCW 6.12.140 to execute against the surplus value over and above the statutory exemption.

(6) May 2, 1962, the Superior Court of King County entered an order in the Louis Aronson probate cause, adjudging that the title of the residence on which the Aronsons' homestead had been filed had vested in Cecelia Aronson as her separate property immediately upon the death of her husband, Louis. This real property was then stricken from the Louis Aronson estate inventory filed in the probate cause.

(7) August 24, 1962, plaintiff-respondent filed this action to have the execution by the sheriff (referred to above in event (5)) enjoined permanently on the ground that the real property was Cecelia Aronson's separate property and was exempt from execution as a homestead, and therefore, not subject to execution for the community debt of Louis and Cecelia Aronson.

The trial court's decree in favor of plaintiff-respondent reads as follows:

It is Hereby Ordered, Adjudged and Decreed as follows:

1. That the plaintiff, Cecelia Aronson, is the owner, in fee simple, as her separate property, of the following described real estate situated in the County of King, State of Washington, to-wit: . . . [then followed the legal description of the land].

2. That the title to the said real estate is hereby quieted in the plaintiff, Cecelia Aronson, as against any and all claims of the defendant, Ebba Murk, and it is hereby adjudged and decreed that the judgment made and

entered on December 10, 1958, in Cause No. 512375 of the Superior Court of King County, Washington, in favor of the defendants Ebba Murk and Ragnar Murk, her husband, and against Louis Aronson and the community consisting of said Louis Aronson and Cecelia Aronson, his wife, is not a lien on said real estate.

3. That the Sheriff of King County, Washington, be and he is hereby perpetually enjoined from levying upon or selling the above described real estate under writ of execution issued in said Cause No. 512375 of the Superior Court of King County, Washington.

4. That the plaintiff, Cecelia Aronson, is hereby granted judgment against the defendant Ebba Murk, for her costs and disbursements herein.

Appellant has made four assignments of error which serve to raise one main issue in this case, and several sub-issues related to the main issue, which must be considered in the determination of the case. The main issue is whether the homestead statute somehow operates to give a surviving spouse an exemption from execution of the total value of the real estate, regardless of the limitation of the homestead exemption to only $6,000 during the life of both spouses. This issue only arises when the property out of which the homestead is claimed was community property at the time the homestead was filed.

The sub-issues are (1) whether it is material that the judgment in this case did not become a lien against the homestead exemption or the surplus value over and above the exemption, and (2) whether the determination of the probate court that the real estate became the separate property of the widow in this instance, whereas the debt was a community debt, is decisive of the issue as to whether the property can be subject to execution pursuant to RCW 6.12.140.

Five sections of the homestead act are important to this appeal because they are the basic expressions of the law applicable to this case.

RCW 6.12.080 provides:

From and after the time the declaration is filed for record the premises therein described constitute a home-

stead. If the selection was made by a married person from the community property, the land, on the death of either of the spouses, vests in the survivor, subject to no other liability than such as exists or has been created under the provisions of this chapter; in other cases, upon the death of the person whose property was selected as a homestead, it shall go to his heirs or devisees, subject to the power of the superior court to assign the same for a limited period to the family of the decedent; but in no case shall it be held liable for the debts of the owner, except as provided in this chapter.

RCW 6.12.100 provides:

The homestead is subject to execution or forced sale in satisfaction of judgments obtained:

(1) On debts secured by mechanic's, laborer's, materialmen's or vendor's liens upon the premises.

(2) On debt secured by mortgages on the premises executed and acknowledged by the husband and wife or by any unmarried claimant.

RCW 6.12.140 reads:

When the execution for the enforcement of a judgment obtained in a case not within the classes enumerated in RCW 6.12.100 is levied upon the homestead, the judgment creditor may apply to the superior court of the county in which the homestead is situated for the appointment of persons to appraise the value thereof.

RCW 6.12.220 provides:

If, from the report, it appears to the court that the land claimed can be divided without material injury the court must, by an order, direct the appraisers to set off to the claimant so much of the land including the residence, as will amount in value to the homestead exemption, and the execution may be enforced against the remainder of the land.

RCW 6.12.230 reads:

If, from the report, it appears to the court that the land claimed exceeds in value the amount of the homestead exemption and that it cannot be divided, the court must make an order directing its sale under the execution.

The key to the determination of this dispute is to be found in the meaning of the words in RCW 6.12.080, which

read: "subject to no other liability than such as exists or has been created under the provisions of this chapter." Appellant claims that this makes reference to both RCW 6.12.100 and RCW 6.12.140, whereas respondent claims that only RCW 6.12.100 prescribes the liabilities for which a homestead is liable.

We agree with appellant's interpretation of the language of RCW 6.12.080. RCW 6.12.140 refers to the levying of execution against the surplus equity over and above the exemption value ($6,000) in a parcel of real estate which has been made subject to a homestead filing. RCW 6.12.100 refers to claims which may be made *even against the exemption value itself, because of the nature of the claim.* The ambiguity, which is the cause of this lawsuit, is in the word "homestead" which is sometimes used in the statute to refer to the parcel of property, and at other times to refer only to the exemption value.

It is perfectly clear to this court that whatever a surviving spouse receives by virtue of the statutory language in RCW 6.12.080 is subject to such claims as might be made under either RCW 6.12.100 or RCW 6.12.140.

The respondent has argued that, when the homestead is filed prior to the obtaining of a judgment, no judgment lien attaches, and, when the property is transferred to another person, it is transferred free and clear of any claim of the judgment creditor. For her authority, respondent relies on *Lien v. Hoffman,* 49 Wn.2d 642, 306 P.2d 240 (1957); and the two cases cited therein, *Barouh v. Israel,* 46 Wn.2d 327, 281 P.2d 238 (1955); and *Traders' Nat'l Bank of Spokane v. Schorr,* 20 Wash. 1, 54 Pac. 543, 72 Am. St. Rep. 17 (1898).

We must take this proposition in two parts in order to understand the significance of the authorities cited by respondent. *First,* what is the significance of the dictum in *Lien v. Hoffman, supra,* that "when the homestead exemption is established *prior* to judgment, this court has held that the judgment does not become a lien upon the property . . . except in certain specified situations fixed by statute, which need not be noticed at this time. See RCW

6.12.100." This refers to the legal explanation as to why the property cannot be followed into the hands of a bona fide purchaser. Both *Barouh v. Israel, supra* at 331, and *Traders' Nat'l Bank of Spokane v. Schorr, supra* at 8, made it clear that the rules that were discussed applied to protect bona fide purchasers of homesteaded property. If a judgment creditor were allowed to follow the real property into the hands of a bona fide purchaser, the purpose and benefit of the homestead statute would be largely lost. The opinion in *Lien v. Hoffman, supra,* clearly explains this problem, quoting from Thompson, Homestead and Exemptions 342 (1886).

As was impliedly stated in *Lien v. Hoffman, supra* at 649, the judgment creditor still has his rights against the judgment debtor, who now has the proceeds of the sale. If the judgment debtor invests in a new homestead within a year, then the creditor may still bring the statutory proceeding for execution under RCW 6.12.140 *et seq.* If the proceeds from a voluntary sale of the homestead are not so invested within 1 year, then the funds are not exempt as proceeds from a homestead. See RCW 6.12.090, which allows exemption of the funds for only 1 year from the date of the involuntary sale. Also, see *Becher v. Shaw,* 44 Wash. 166, 87 Pac. 71 (1906).

The purpose of these rules was clearly stated in *Lien v. Hoffman, supra,* where we said, "Our conclusion . . . simply protects the right of the judgment debtor to substitute one homestead for another in accordance with the terms of the statute."

The question posed by the facts in the case at bar is different. Did the legislature intend to grant a surviving spouse an unlimited homestead exemption? The surviving spouse is not a bona fide purchaser, and no funds come into the hands of the estate by the transfer under RCW 6.12.080. No new homestead is to be purchased against which the statutory proceedings of RCW 6.12.140, *et seq.,* may apply, if the property value greatly exceeds the exemption. There is no potential substitution of homesteads. Under respondent's theory, the surviving spouse receives an

increased exemption to the full value of the real property, regardless of its value, even if it should be worth, for example, $100,000. We do not believe that the legislature intended to give the surviving spouse a homestead subject only to the claims under RCW 6.12.100 as distinguished from claims under RCW 6.12.140, because this would remove all exemption limits from community property homesteads following the death of one spouse.

The fact that there is no "judgment lien" is immaterial when the property is in the hands of the judgment debtor. In *Traders' Nat'l Bank of Spokane v. Schorr, supra* at 8, 9, this court stated:

> Provision is made by our statutes for reaching the excess in value of real estate claimed as a homestead over the amount exempted, *but it is not the ordinary enforcement of the lien or a sale under execution.* It is a special mode of sale after an appraisement. We think it is apparent, from an examination of the legislation creating and protecting the homestead in this state, and the construction placed upon such statutes by this court, that a general judgment lien does not operate upon, and does not attach to, premises which constitute a homestead, and the view taken by counsel for respondents that such lien may attach to the excess in value above the homestead exemption is erroneous. (Italics ours.)

The problem in *Traders' Nat'l Bank of Spokane v. Schorr, supra,* concerned the attempt of the judgment creditor to reach the excess in value above the statutory exemption after the property had been sold to a bona fide purchaser. If the homestead property had remained in the hands of the judgment debtor, there would have been no doubt that the excess in value could be reached through the process provided for by statute (now codified as RCW 6.12.140 *et seq.*), even though no judgment lien had attached. So long as the property remains in the hands of persons protected by the homestead exemption under RCW 6.12.080, the rule should be the same as that applied to the execution against the judgment debtor, because the rights which were received under RCW 6.12.080 were intended by the legislature to be subject to the same claims.

█ It is also immaterial that the homesteaded property is not part of the probate estate of Louis Aronson. The decree of the probate court did not determine the question of whether the surplus value over and above the homestead exemption is subject to the execution for a community debt under RCW 6.12.140 *et seq.* It determined only that the community property in the probate estate did not presently include this real estate.

This case is different from *Locke v. Collins*, 42 Wn.2d 532, 256 P.2d 832 (1953), which was cited favorably by respondent. In the case at bar, the homestead was filed before the judgment against the debtor was rendered; hence, no judgment lien arose against the property. In *Locke v. Collins, supra*, there was a judgment lien because the judgment preceded the filing of the homestead. Afterward, the parties who were judgment debtors had been discharged from all personal liability in bankruptcy. If there had not been a judgment lien in the *Locke* case, the execution could not have been made under RCW 6.12.140, because there was no personal liability. However, the opinion in *Locke v. Collins, supra*, does not say that a lien is necessary in every execution under RCW 6.12.140, but that it was necessary in that situation in view of the fact that personal discharge in bankruptcy had occurred.

In the present case, there is no showing that the community estate has been discharged from the debt. Since no execution was issued prior to the death of Louis Aronson, and since there was no judgment lien because of the prior filing of the homestead, RCW 11.40.130 requires that the judgment be presented like any other claim against the estate of the decedent, except that the claim need not be supported by an affidavit of the creditor. If no claim based on this judgment was filed in the probate proceeding, then the statutory 6 months' period has run, and the claim is barred under RCW 11.40.010.

█ Respondent's complaint pleaded nothing to the effect that the claim was barred for failure to file such a claim, nor is there anything in the record to show the failure to file

such a claim, because, even though the complaint incorporated all the probate file by reference, the probate file was not sent up to this court as a part of the record. On the other hand, appellant's counterclaim does not rely solely on the existence of a judgment lien, but rather on the existence of the statutory execution procedures outlined in RCW 6.12.140, *et seq.* Likewise, in appellant's brief, she does not rely on lien theory, but on the existence of a statutory right to execute. Either the trial court in the probate proceeding has already recognized the claim or it is barred by the statute of nonclaim. We cannot rule on this point because of a lack of information. This is not an instance where "burden of proof" requires only one party to prove the status of this claim. The status of this claim is equally a part of the case of both parties.

Therefore, we hold that this case must be remanded to the trial court for the determination of the question as to whether this claim has been presented according to the statutory requirements for claims against an estate in probate. If the claim has been properly presented, then appellant is entitled to proceed with the statutory execution procedures outlined in RCW 6.12.140, *et seq.* If the claim has been barred, then appellant is not entitled to execute against the homestead's excess value under RCW 6.12.140.

We are not holding that there is any excess value above the exemption value plus other superior claims against this property. The record is silent as to the appraised value of this real property under the statutory procedures. We only hold that appellant is entitled, on the facts in this record, to pursue her remedy under RCW 6.12.140, *et seq.*, provided she has filed and presented her claim properly under RCW 11.40.010, *et seq.*

Our decision does not depend on the existence of a lien, but rather on expressed statutory public policy. It might be compared with the public policy behind the reservation of creditors' rights in RCW 26.16.120, regarding community property agreements, which reads:

> *Provided, however,* That such agreement shall not derogate from the right of creditors  . . . .

We believe that the same legislative policy was expressed when the legislature made the transfer in RCW 6.12.080 subject to claims under RCW 6.12.140 *et seq.*

The judgment of the trial court is hereby vacated and the case is remanded to the trial court for the determination of whether the claim of appellant has been presented according to the statutory requirements for claims against the estate of a decedent in probate. Disposition of respondent's action will be made according to the law as expressed in this opinion, depending on the answer to that question. The awarding of costs of this appeal shall abide the final result of further proceedings in the trial court. It is so ordered.

ROSELLINI, C. J., FINLEY and HAMILTON, JJ., and RYAN, J. Pro Tem., concur.

